UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

ARIANE PEREZ,

    Plaintiff,

v.                                            Case No. 8:20-cv-769-SPF

UNITED STATES OF AMERICA,

    Defendant.
_____/

## ORDER

Before the Court is Defendant's motion *in limine* (Doc. 37) and Plaintiff's opposition thereto (Doc. 40). Defendant seeks entry of an Order preventing Plaintiff's treating physician, Dr. Charles Davis, from offering a causation opinion. Additionally, Defendant seeks to cap Plaintiff's damages at $126,417.38, the request in Plaintiff's original pre-suit administrative claim. Plaintiff opposes the relief sought, asserting that Dr. Davis should be permitted to testify as to causation because his opinions were formulated during the course of treatment and that damages should not be capped by Plaintiff's original administrative claim because Plaintiff timely amended her claim based on "newly discovered evidence" and/or "intervening facts." Upon consideration, the motion is granted in part and denied in part as set forth below.

## BACKGROUND

Plaintiff Ariana Perez filed this action against Defendant United States of America pursuant to the Federal Tort Claims Act ("FTCA"), 28 U.S.C. § 2671, *et seq.*

According to Plaintiff, on August 13, 2018, she was rear-ended by a vehicle driven by Defendant's employee, Joel Handlon.[1] (Doc. 45). Plaintiff alleges that "Handlon was negligent and caused the crash by failing to stop in time. The result of the impact forced Plaintiff's vehicle into the back of the vehicle stopped in front of her." (*Id.*). Plaintiff further alleges that she sustained permanent injuries, including to her cervical and lumbar spine. (*Id.*).

On June 14, 2019, Plaintiff sent a demand letter for $126,417.38 to the agency that employed Handlon, the Office of Personnel Management ("OPM"). (Doc. 37-3). Plaintiff supported her demand with medical records including a report by Dr. Hay Parekh, D.O., dated January 14, 2019, in which Plaintiff is diagnosed with a disc herniation at the C4-C5 level. (Doc. 37-5). Dr. Parekh opined that the "estimated cost of ongoing care for the cervical spine [will] exceed $100,000." (*Id.*).

Thereafter, on October 2, 2019, Plaintiff was seen for the first time by Dr. Charles Davis. (Doc. 37-6). Because Plaintiff's prior conservative treatment failed, Dr. Davis determined that Plaintiff was now a surgical candidate for total disc replacement. (*Id.*). On December 2, 2019, Plaintiff underwent a "complete radical discectomy with bilateral foraminotomy at C4-5 and C5-6 and insertion of a total disc replacement, Mobi-C, 15 x 15, at both C4-5 and C5-6." (Doc. 37-10).

Five days prior to Plaintiff's surgery, OPM sent a certified letter to Plaintiff's counsel noting Plaintiff's rejection of OPM's settlement offer and issuing a final denial

---

[1] In her Complaint, Plaintiff alleged Defendant's employee rear-ended a second vehicle and forced it to strike a third vehicle in which Plaintiff was a passenger (Doc. 1).

of Plaintiff's claim. (Doc. 37-11). More than two months later, Plaintiff, on February 4, 2020, sent OPM a letter seeking to amend her administrative claim to increase her demand to $1,000,000. (Doc. 37-10). On February 18, 2020, OPM denied the request to amend her administrative claim because it had already issued its final denial decision. (Doc. 37-12). Plaintiff responded by requesting that OPM reconsider the denial of Plaintiff claim. (Doc. 37-13). On March 13, 2020, OPM sent Plaintiff a letter reaffirming its denial of her claim. (Doc. 37-14).

## DISCUSSION

A motion *in limine* is "any motion, whether made before or during trial, to exclude anticipated prejudicial evidence before the evidence is actually offered." *Luce v. United States*, 469 U.S. 38, 40 n. 2 (1984). "In fairness to the parties and their ability to put on their case, a court should exclude evidence *in limine* only when it is clearly inadmissible on all potential grounds." *United States v. Gonzalez,* 718 F. Supp. 2d 1341, 1345 (S.D. Fla. 2010). Moreover, the movant bears the burden of demonstrating that the evidence is inadmissible on any relevant ground. *Id.* In light of the preliminary or preemptive nature of motions *in limine*, "any party may seek reconsideration at trial in light of the evidence actually presented and shall make contemporaneous objections when evidence is elicited." *Miller ex rel. Miller v. Ford Motor Co.*, No. 2:01CV545FTM-29DNF, 2004 WL 4054843, at *1 (M.D. Fla. July 22, 2004).

The rationale underlying pre-trial motions *in limine* generally does not apply in a bench trial, where it is presumed the trial judge will disregard inadmissible evidence and rely only on competent evidence. *Singh v. Caribbean Airlines Ltd.*, No. 13-20639-

CIV, 2014 WL 4101544, at *1 (S.D. Fla. Jan. 28, 2014).  When an action proceeds as a bench trial, the pretrial consideration of such motions "weighs heavily in favor of denying the motions *in limine* and addressing the issues if and when they come up at trial." *Johnson & Johnson Vision Care, Inc. v. CIBA Vision Corp.*, 616 F. Supp. 2d 1250, 1256 (M.D. Fla. 2009).  Indeed, the more prudent course of action in a bench trial is often to resolve evidentiary doubts in favor of admissibility.  *Singh*, 2014 WL 4101544, at *1.

      **I.**     **Expert Disclosure of Dr. Charles Davis**

Federal Rule of Civil Procedure 26(a)(2) governs disclosures of expert witnesses.  The scope of a party's expert disclosure turns on whether the expert witness is one "retained or specially employed to provide expert testimony in the case." Fed. R. Civ. P. 26(a)(2)(B).  If the expert fits this category, the party must produce a detailed written report that contains: (i) a complete statement of all opinions the witness will express and the basis and reasons for them; (ii) the facts or data considered by the witness in forming them; (iii) any exhibits that will be used to summarize or support them; (iv) the witness's qualifications, including a list of all publications authored in the previous ten years; (v) a list of all other cases in which, during the previous four years, the witness testified as an expert at trial or by deposition; and (vi) a statement of the compensation to be paid for the study and testimony in the case.  Rule 26(a)(2)(B)(i)-(vi).  In contrast, the disclosure requirements for experts who do not fall within the Rule 26(a)(2)(B) category is less cumbersome.  The party offering the expert opinion need only disclose "(i) the subject matter on which the witness is expected to

4

present evidence under Federal Rule of Evidence 702, 703, or 705; and (ii) a summary of the facts and opinions to which the witness is expected to testify." Fed. R. Civ. P. 26(a)(2)(C).

Defendant complains that Plaintiff's disclosure of Dr. Davis suffers from two distinct deficiencies: 1) Dr. Davis was required to provide report as required by Rule 26(a)(2)(B) because he was specifically retained to offer a causation opinion; and 2) in the alternative, Plaintiff failed to provide an appropriate summary of the facts and opinions to which Dr. Davis is expected to present testimony as required by Rule 26(a)(2)(C). Plaintiff maintains Dr. Davis was not retained to offer an expert opinion at trial and that, as a treating physician, Dr. Davis may offer an opinion as to causation without the need for an expert report where said opinion is formulated through the normal course of treatment. Finally, Plaintiff contends that her disclosure of Dr. Davis satisfied the requirement of Rule 26(a)(2)(C).

### A. Rule 26(a)(2)(B)

Defendant suggests that "because Plaintiff's expert witness disclosure admits openly that Dr. Davis 'will offer his <u>expert opinion</u> as to the cause of Plaintiff's injuries,' Plaintiff was required to provide a full written report pursuant to Rule 26(a)(2)(B)." (Doc. 37 at 7) (emphasis in original). Defendant's argument misses the mark. Rule 26(a)(2) requires the disclosure of <u>expert</u> witness—that is "any witness it may use at trial to present evidence under Federal Rule of Evidence 702, 703, or 705." Therefore, it is only because Plaintiff seeks to elicit an expert opinion from Dr. Davis at trial that any Rule 26(a)(2) expert disclosure is required.

As for which expert disclosure requirement applies to Dr. Davis, the determination rests solely on whether he was "retained or specially employed to provide expert testimony in the case." Fed. R. Civ. P 26(a)(2)(B). Defendant asserts that Dr. Davis' records show Plaintiff's intent from the outset of her treatment with Dr. Davis was to "specifically employ" him as an expert. (Doc. 37 at 9) (citing initial intake form indicating she was referred by counsel (Doc. 37-15); Letter of Protection (Doc. 37-26); Dr. Davis' records state that "there was a reasonable degree of medical probability that the patient has sustained injuries and impairment as a result of the accident" (Docs. 37-16 through 37-25)). Plaintiff disagrees, stating that Dr. Davis was "never employed to provide his expert testimony." (Doc. 40 at 13).

An attorney may refer a client to a physician for *treatment* without that physician being deemed to have been retained or specially employed to provide expert testimony. Likewise, a physician may to agree a letter of protection[2] to defer payment for that treatment without becoming a retained expert. In determining whether a Rule 26(a)(2)(B) report is required, the label of "treating physician" is irrelevant; instead, the determination turns on the nature and substance of the physician's testimony.

---

[2] "A letter of protection is a document sent by an attorney on a client's behalf to a healthcare provider when the client needs medical treatment but does not have insurance. Generally, the letter states that the client is involved in a court case and seeks an agreement from the medical provider to treat the client in exchange for deferred payment of the provider's bill from the proceeds of [a] settlement or award; and typically, if the client does not obtain a favorable recovery, the client is still liable to pay the provider's bills." *Johnson v. Carnival Corp.*, No. 19-CV-23167, 2021 WL 1379209, at *3 n.3 (S.D. Fla. Apr. 12, 2021) (quoting Caroline C. Pace, Tort Recovery for Medicare Beneficiaries: Procedures, Pitfalls and Potential Values, 49 Hous. Law. 24, 27 (2012)).

*Singletary v. Stops, Inc.*, No. 6:09–cv–1763–Orl–19KRS, 2010 WL 3517039, at *6 (M.D. Fla. Sept.7, 2010). "When a treating physician testifies regarding opinions formed and based upon observations made during the course of treatment, the treating physician need not produce a Rule 26(a)(2)(B) report." *Kroll v. Carnival Corp.*, No. 19-23017-CIV, 2020 WL 4926423, at *3 (S.D. Fla. Aug. 20, 2020). When the treating physician's opinions extend beyond those arising from treatment, however, a full Rule 26(a)(2)(B) reports is required. *In re Denture Cream Prod. Liab. Litig.*, No. 09-2051-MD, 2012 WL 5199597, at *4 (S.D. Fla. Oct. 22, 2012), on reconsideration in part, No. 09-2051-MD, 2012 WL 13008163 (S.D. Fla. Nov. 14, 2012); *see also Wilson v. Taser Int'l, Inc.*, 303 F. App'x 708, 712 (11th Cir. 2008) (excluding treating expert's causation opinion on the basis that the cause of the plaintiff's injuries was not needed to explain the treating physician's treatment).

Here, the Court is unable to determine whether Dr. Davis' causation opinion arose from his treatment of Plaintiff or whether it was made for purposes of litigation. The Court agrees with Defendant that Dr. Davis' use of the legal standard, "reasonable degree of medical probability," as well as the timing of the opinion (more than a year after the accident) strongly suggests that Dr. Davis' causation opinion was provided to support Plaintiff's litigation, not treatment. While Plaintiff, as the party seeking to avoid producing a full written expert report, bears the burden of demonstrating that a Rule 26(a)(2)(B) report was not required (*In re Denture Cream Prod. Liab. Litig.*, 2012 WL 5199597, at *4), the Court is mindful that this case is set for bench trial and Dr. Davis has not been deposed. Under the circumstances, the Court finds the most

prudent course of action is to receive Dr. Davis' testimony at trial before deciding whether his causation opinion arose from his treatment of Plaintiff.

### B. Rule 26(a)(2)(C)

Even if Dr. Davis was not retained or specially employed to provide expert testimony in the case, before he can testify as an expert Plaintiff must provide the disclosure required by Rule 26(a)(2)(C). *See Sweat v. United States*, No. 8:14-CV-888-T-17JSS, 2015 WL 8270434, at *2 (M.D. Fla. Dec. 8, 2015) ("A treating physician may testify as either a lay witness or an expert witness; however, in order to testify as an expert witness, the physician must provide the required disclosures under either Rule 26(a)(2)(B) or Rule 26(a)(2)(C)."). Plaintiff contends that the following summary that she disclosed to Defendant satisfies this requirement:

> It is expected that Dr. Davis will offer his expert opinion as to the cause of Plaintiff's injuries based on his examination and treatment of Plaintiff, as well as his clinical experience, medical research, and training as a Board Certified Orthopedic Spinal Surgeon. As detailed in the medical records already produced through discovery, Dr. Davis opined during his Oct. 2, 2019 examination of that Plaintiff that "given the patients' medical history as presented there is a reasonable degree of medical probability that the patient has sustained injuries and impairment as a result of the accident and given the patient's report history, timing, and onset of symptoms specifically following the above accident on 8/13/2018." Plaintiff adopts and incorporates by reference herein each and every opinion listed in the multiple reports of Dr. Davis.

(Doc. 37-27).

When evaluating Plaintiff's Rule 26(a)(2)(C) disclosure, the Court is mindful that the requirement is "considerably less extensive than the report required by Rule 26(a)(2)(B)" and that the Court should not require "undue detail" for such disclosures.

8

Fed. R. Civ. P. 26 (Advisory Committee's Notes to 2010 Amendment). The reason being that witnesses who have not been specially retained "may not be as responsive to counsel as those who have." *Id.*

Although Plaintiff's summary of facts and opinions to which Dr. Davis is expected to testify falls short of ideal, it is sufficient to notify Defendant of Dr. Davis' October 2, 2019 opinion and his stated basis for forming the opinion. But Plaintiff attempts to go further by "adopt[ing] and incorporat[ing] by reference herein each and every opinion listed in the multiple reports of Dr. Davis." (*Id.*). This is improper. "Allowing this type of vague reference defeats the purpose of the Federal Rules, and would invite a party to dump voluminous medical records on the opposing party, contrary to the rule's attempt to extract a summary." *Goncharenko v. Royal Caribbean Cruises, Ltd.*, 734 F. App'x 645, 647 (11th Cir. 2018) (quotation omitted). Therefore, Dr. Davis is precluded from offering at trial the opinions listed in the unspecified "multiple reports." Dr. Davis, however, may testify as a lay witness as to any observations made while treating Plaintiff.

## II.  Damages

The United States, as sovereign, is immune from suit save as it consents to be sued. *United States v. Mitchell*, 445 U.S. 535, 538 (1980). "The FTCA represents a limited congressional waiver of sovereign immunity for injury or loss caused by the negligent or wrongful act or omission of a government employee acting within the scope of his office or employment, under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place

9

where the act or omission occurred." *Shivers v. United States*, 1 F.4th 924, 928 (11th Cir. 2021) (quotation omitted).  Prior to bringing a lawsuit under the FTCA, a plaintiff must present a claim for money damages against the United States to the appropriate federal agency.  28 U.S.C. § 2675(a).  Moreover, the action "shall not be instituted for any sum in excess of the amount of the claim presented to the federal agency, except where the increased amount is based upon newly discovered evidence not reasonably discoverable at the time of presenting the claim to the federal agency, or upon allegation and proof of intervening facts, relating to the amount of the claim." 28 U.S.C. § 2675(b).

It is undisputed that Plaintiff presented an administrative claim to the proper federal agency, OPM, for damages in the amount of $126,417.38.  As a result, Defendant seeks entry of an Order excluding evidence in excess of that amount. Plaintiff argues that the damages sought in this FTCA action should not be capped because 1) she properly amended her administrative claim, and 2) the increased amount is based upon newly discovered evidence or intervening facts relating to the amount of the claim.

### A. Amended Claim

Defendant maintains Plaintiff's February 4, 2020 request to amend her administrative claim was untimely because it was presented after the agency's final denial of her claim on November 27, 2019.  The Court agrees. Pursuant to the applicable OPM regulation, a claim "may be amended by the claimant at any time prior to final agency action or prior to the exercise of the claimant's option under 28

10

U.S.C. § 2675(a)." 5 C.F.R. § 177.102(e).  The Eleventh Circuit has interpreted that language to mean "a claimant is free to amend his agency complaint any time during the administrative grievance process; however, he may not do so once the agency has taken final action." *Torjagbo v. United States*, 285 F. App'x 615, 617 (11th Cir. 2008) (interpreting identical language found in the Department of Justice regulation 28 C.F.R. § 14.2(c)).  Accordingly, Plaintiff did not timely amend her administrative claim to increase her demand.

### B. *Newly Discovered Evidence or Intervening Facts*

Even though Plaintiff did not timely amend her administrative claim, she may seek damages in excess of that claim if the increased amount is "based on newly discovered evidence not reasonably discoverable at the time of presenting the claim to the federal agency, or upon allegation and proof of intervening facts, relating to the amount of the claim." 28 U.S.C. § 2675(b).  To determine whether a plaintiff may claim an increased amount of damages above the administrative claim, Circuit Courts of Appeals have employed three different approaches: (1) the "worse-case prognosis" test, (2) the "reasonably foreseeable/reasonably discoverable" test, and (3) the "change in expectations" test. *Salas v. United States*, No. CV 16-2485 (SRC), 2021 WL 82268, at *6 (D.N.J. Jan. 11, 2021).  Binding Eleventh Circuit precedent requires this Court employ the change in expectations test. *Fraysier v. United States*, 766 F.2d 478, 480 (11th Cir. 1985).  As one court has observed, this is the "most lenient approach . . . which tries to determine whether the plaintiff had, at the time the administrative claim was filed, reason to believe that the injury would worsen or circumstances would

11

change." *Salas*, 2021 WL 82268, at *6. Therefore, "a reasonably based change in expectation as to the severity and permanence of an injury is newly discovered evidence within the meaning of section 2675(b)." *Cole v. United States*, 861 F.2d 1261, 1262 (11th Cir. 1988); *see United States v. Alexander*, 238 F.2d 314, 318 (5th Cir. 1956) (plaintiff allowed increase in damages when he believed at time of filing that his arm would heal but later discovered that it would not improve without surgery); *see also Hutchison v. United States*, No. 7:11–CV–131, 2013 WL 950050, at *2 (M.D. Ga. Mar. 11, 2021) (finding that the discovery of the need for surgery does constitute "newly discovered evidence" within the meaning of § 2675.).

Defendant argues that Plaintiff cannot show newly discovered evidence or intervening facts because Plaintiff underwent surgery prior to filing this action. Whether Plaintiff knew of her increased damages prior to filing suit is irrelevant. Instead, the Court must determine whether "the increased amount is based upon newly discovered evidence not reasonably discoverable *at the time of presenting the claim to the federal agency*." 28 U.S.C.A. § 2675(b) (emphasis added). Plaintiff presented her claim to OPM on June 14, 2019, and she alleges that she did not learn that she was a surgical candidate until seeing Dr. Davis on October 2, 2019. Accordingly, the Court will not preclude Plaintiff from offering evidence at trial to prove a reasonably based change in expectation as to the severity and permanence of her injury. If Plaintiff makes such a showing, she will be entitled to seek damages in excess of her administrative claim.

Accordingly, it is hereby

ORDERED:

1. Defendant's motion *in limine* (Doc. 37) is GRANTED to the extent that Dr. Davis is precluded from offering a causation opinion, unless Plaintiff demonstrates at trial that Dr. Davis' causation opinion was formed and based upon observations made during the course of treatment of Plaintiff on October 2, 2019.

2. In all other respects, the motion is DENIED WITHOUT PREJUDICE.

**ORDERED** in Tampa, Florida, on August 3, 2021.

SEAN P. FLYNN
UNITED STATES MAGISTRATE JUDGE